Patricio T.D. Barrera (SBN 149696)
Ryan H. Fowler (SBN 227729)
BARRERA & ASSOCIATES
2298 E. Maple Avenue
El Segundo, CA 90245
Tel: (310) 802-1500
Fax: (310) 802-0500
Email: barrera@baattorneys.com;
fowler@baattorneys.com

Attorneys for Plaintiff Hyperlync Technologies, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HYPERLYNC TECHNOLOGIES, INC., a Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>T-MOBILE USA, INC., a Corporation; and DOES 1 through 10, Inclusive,<br><br>Defendants. | Case No.<br><br>COMPLAINT FOR DAMAGES ALLEGING:<br><br>1. BREACH OF CONTRACT<br>2. QUANTUM MERUIT<br>3. ACCOUNT STATED<br><br>DEMAND FOR A JURY TRIAL |

Plaintiff Hyperlync Technologies, Inc. ("Hyperlync") based upon personal knowledge and upon information and belief as to all others complains and alleges as follows:

## PARTIES

1.  Plaintiff HYPERLYNC TECHNOLOGIES, INC., referred to herein as ("Plaintiff" or "Hyperlync"), is a Florida corporation.

2.  Defendant T-MOBILE USA, INC. ("T-Mobile") is and at all times herein mentioned was a Delaware Corporation doing business in California. Defendant T-Mobile is and at all relevant times was a company doing business in California with a principal place of business

located at 12920 SE 38th Street, Bellevue, WA 98006.

3. Plaintiff is ignorant of the true names and capacities of Defendants sued as DOES 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and alleges that each of the fictitiously named Defendants is responsible for the alleged occurrences and injuries to Plaintiff. Plaintiff is informed, believes and alleges that at all times herein mentioned Defendants were the affiliates, agents, employees and the successor of the other Defendants and in doing the things hereinafter alleged were acting within the course and scope of such agency and/or employment or other business relationships and with the permission and consent of its co-Defendants.

## VENUE AND JURISDICTION

4. Venue is proper within this jurisdiction under 28 U.S.C. §1332 as the parties have different citizenship. The amount in controversy exceeds the jurisdictional minimum of this Court.

## FACTS COMMON TO ALL CAUSES OF ACTION

5. Hyperlync was a loyal and dedicated vendor for Sprint for several years, operating under a Master Service & Support Agreement between the parties and amendments thereto as well as an undisputed course of conduct. Upon Sprint's request, Hyperlync spent time developing a "'Digital Vault' digital lifestyle solution" also referred to as an "Unlimited Cloud" solution for Sprint prior to, and after the closing of the merger between Sprint and T-Mobile, USA, Inc. (T-Mobile).

6. On April 28, 2016, Hyperlync and Sprint/United Management Company (Sprint) entered into a master agreement to govern the parties' working relationship. The Agreement is entitled a "Resale, Service Support and Marketing Agreement" (hereinafter, the "Agreement").

7. The Agreement acknowledges that Hyperlync had developed "solutions" to be made available to Users using the Sprint Network. The Agreement is enforceable against "Sprint" and "Sprint Affiliates." The Agreement, at paragraph 27, page 17, "is binding on and enforceable by each party's permitted successors and assigns."

2
COMPLAINT FOR DAMAGES

8. The Agreement permitted Sprint to terminate the Agreement in the event of a Change in Control; however, Sprint did not terminate it at that time and continued operating under it. In fact, Sprint entered into several amendments to the Agreement during the parties' successful business relationship. The parties drafted memoranda of understanding to reflect contract activity. Sprint terminated the Agreement on November 1, 2022.

9. On April 29, 2018 Sprint and T-Mobile announced they were merging. The merger was completed on April 1, 2020.

10. On April 3, 2019, Sprint representatives Hugo Saboia and Product Marketing Manager Rob Jaeger met with Harry Fox and Zevi Reinitz from Hyperlync to discuss the terms of Hyperlync developing a digital vault for Sprint. Emails were exchanged to discuss pricing and capabilities.

11. On April 11, 2019, Hyperlync made a specific offer on the proposed solutions.

12. On May 25, 2019, a follow-up meeting took place in Sprint's offices. The meeting resulted in the parties reaching an agreement that Hyperlync would develop a customized version of its Digital Vault, which would be licensed to Sprint/T-Mobile, for a three-year term. The terms of compensation were simple and straightforward: Hyperlync would be compensated $1 per device per month without social network backup and a slightly higher amount ($1.35) with social network backup.

13. On May 30, 2019, Sprint's Product Marketing Manager, Rob Jaeger, sent an email to Hyperlync to disclose that Sprint was "presenting Hyperlync's Digital Vault Service to T-Mobile." Sprint enthusiastically endorsed the Hyperlync solutions and represented that T-Mobile's use of the feature would be "an even larger opportunity for Hyperlync as the potential TAM will more than double from 25M postpaid customers to 60M+ postpaid customers.

14. On June 5, 2019, Rob Jaeger confirmed via email that the presentation to T-Mobile went well and the "VP was pleased" with Hyperlync's solution.

15. On July 19, 2019, Rob Jaeger sent an email to Hyperlync confirming the intent of Sprint/T-Mobile to move forward with the Digital Vault product. Emails were

3
COMPLAINT FOR DAMAGES

exchanged in this time frame and Rob Jaeger confirmed in writing that Sprint was "in agreement." Jaeger's outward manifestation and expression of consent is controlling. As Product Marketing Manager, Jaeger was an authorized agent with authority to enter into the subject Unlimited Cloud agreement. Hyperlync relied on Sprint's email and on Sprint's course of conduct to continue working on the solution.

16. On July 24, 2019, Zevi Reinitz of Hyperlync sent an email to Sprint confirming Key Points "to make sure we're all on the same page." The same day, Rob Jaeger replied on behalf of Sprint to confirm that, "[o]verall we are aligned." (Exhibit "A")

17. Thus, Hyperlync knew as of July 2019 that it had been given the green light to work on this project and literally stopped all other work to get the product done on time. Hyperlync relied on Sprint's email and on Sprint's course of conduct to work on the solution.

18. Hyperlync promptly assigned a team of Development Managers, Developers, Graphic Designers, Quality Assurance Personnel, and two administrative staff employees to work diligently on the Unlimited Cloud solution. The Unlimited Cloud solution project was developed and manufactured under the direction and leadership of CEO Harry Fox and Hyperlync's Vice President of Business Development. Hyperlync invested in dedicated hardware and cloud servers. There was travel between Israel and the United States to meet with Sprint Executives/Representatives. Hyperlync relied on Sprint's agreement, representations, and course of conduct to timely develop and complete the Unlimited Cloud solution.

19. On August 13, 2019, Rob Jaeger sent on email from Sprint to Hyperlync to announce that Sprint "settled on a product name today: Sprint Unlimited Cloud." On the same day, the parties exchanged emails about the billing documentation. During the same week, emails were exchanged about the timing of the launch and the scope and breadth of the Hyperlync solution.

20. On September 5, 2019, Rob Jaeger sent Hyperlync an email proposing an offer to modify the compensation paid to Hyperlync for the Unlimited Cloud solution.

4
COMPLAINT FOR DAMAGES

21. On September 11, 2019, Rob Jaeger sent Hyperlync's CEO, Harry Fox, confirming the details of the modifications, confirming a launch date, and setting forth goals and plans for the Hyperlync solution that would be used by Sprint/T-Mobile.

22. On September 12, 2019, Rob Jaeger sent an email to Harry Fox promising an update "following the final approval today." Rob Jaeger apologized for "the delay" on his end and clarified in a subsequent email, dated September 17, 2019, that his reference to "final approval" referred to Finance department approval regarding the billing system only.

23. On September 20, 2019, Harry Fox wrote to Hugo Saboia and Rob Jaeger to express disappointment about the delay and to request an addendum to the contract to be completed and signed to reflect "the sign off on the $250k" "NRE to be deducted from the first royalties." Mr. Fox's email again confirms that the parties "have already agreed to all the terms" with the only issue concerning the timing and amount of Sprint's initial payment to Hyperlync.

24. At no time, did anyone from Sprint or T-Mobile disagree with, or object to, Hyperlync's contractual understanding. At no time did anyone from Sprint or T-Mobile instruct Hyperlync to stop working on the Unlimited Cloud solution. At no time did anyone from Sprint or T-Mobile communicate that there would be any problem paying Hyperlync for its professional services concerning the Unlimited Cloud solution. The emails make clear that Sprint/T-Mobile did not remain silent in the face of Hyperlync's communications and worked on the solution. At each stage, Sprint/T-Mobile thanked Hyperlync for its performance and updates regarding the Unlimited Cloud solution and encouraged Hyperlync to "keep things moving."

25. Over the next week, emails are exchanged between the parties concerning Unlimited Cloud being part of Sprint's "premium package" and the number of Sprint customers who are part of the Sprint "Premium Plan." The discussions at this stage centered on expanding the Unlimited Cloud solution. Again, Hyperlync relied on these email communications and on Sprint's course of conduct to continue working on the solution.

5
COMPLAINT FOR DAMAGES

26. On September 27, 2019, Rob Jaeger provided Hyperlync with a clean copy of an amendment to the Agreement between Sprint and Hyperlync with respect to Unlimited Cloud. The emails and drafts confirm the central deal points which were not in dispute.

27. On February 10, 2020, Harry Fox emailed Hugo Saboia confirming the confirmation of the compensation terms from Sprint to Hyperlync that Hugo sent to Harry. The same day, Hugo Saboia responds to Hyperlync's confirming email, via a reply email that simply stated: "Great. Thanks!"

28. On May 12, 2020, Hyperlync emailed Gautam Bharti and Richard McColligan of T-Mobile to provide an update regarding new features and benefits of Hyperlync's Unlimited Cloud situation. Harry Fox was copied on this email and he replied to confirm to T-Mobile that Hyperlync has "always kept our promises and always will."

29. On May 17, 2020, Harry Fox emailed the new T-Mobile representative re this account, Michael Lasso, to confirm that Hyperlync already meets T-Mobile's criteria for an approved vendor.

30. On May 19, 2020, Hugo Saboia emailed Harry Fox to disclose a transition at T-Mobile regarding "Cloud Leadership." Notably, Mr. Saboia's email confirms that the new leader, Mitch Rice, on behalf of T-Mobile, is "fully aligned with the strategy that we put together and **nothing has changed**...." (Emphasis added). Hugo Saboia closed by offering to speak in case Harry Fox had "any doubt." Harry Fox had no doubts about the agreement or the relationship. Hyperlync relied on these email communications and on T-Mobile's representations, promises, and course of conduct to continue working on the solution.

31. On October 14, 2020, the new T-Mobile leader, Mitch Rice, emailed Harry Fox to thank Hyperlync for "patience" and confirming "we have gained agreement at the SVP level to move forward with the launch of a cloud product in 2021." This email confirmed T-Mobile's use of, and need to pay for, Hyperlync's Unlimited Cloud solution.

1  Hyperlync relied on this email and on T-Mobile's representations, promises and course of
2  conduct to continue working on the solution.
3        32.    On December 15, 2020, Richard McColligan of T-Mobile emailed Harry
4  Fox to disclose that Mitch Rice was out at T-Mobile. McColligan's email made clear that
5  "Cloud has been officially prioritized as 2021 project." McColligan's email indicated that
6  the assessment of the launch process would be a "6 week process." This email confirmed
7  T-Mobile's use of, and need to pay for, Hyperlync's Unlimited Cloud solution. Hyperlync
8  relied on this email and on T-Mobile's representations, promises, and course of conduct to
9  continue working on the solution.
10       33.    For the next few months, T-Mobile ignored Hyperlync. Mitch Rice was out
11 of T-Mobile. Rich McColligan was allegedly out on extended medical leave.
12       34.    On May 4, 2021, Harry Fox received an email from a new T-Mobile contact,
13 Bradley Hannon, who immediately claimed to be "over committed." Hannon referred Fox
14 to Jonathan England to "keep things moving." Hyperlync relied on this email and on T-
15 Mobile's representations, promises, and course of conduct to continue working on the
16 solution to "keep things moving."
17       35.    On June 7, 2021, Harry Fox emailed Jonathan England, going through the
18 history behind Hyperlync's development of the Unlimited Cloud Project for Sprint/T-
19 Mobile.
20       36.    On April 5, 2022, Jonathan England emailed Harry Fox announcing, for the first
21 time, that "T-Mobile does not have any interest in the Digital Vault Product or IP."
22       37.    On August 8, 2022, Plaintiff sent T-Mobile an invoice, dated August 4, 2022
23 (Exhibit "B"), for services performed and demanded payment. T-Mobile refused to pay. This
24 lawsuit followed.
25 //
26 //
27 //
28

## FIRST CAUSE OF ACTION
## Breach of Contract - Oral
(Against All Defendants)

38. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 37, inclusive, and incorporates each paragraph as if fully set forth herein.

39. Pursuant to the aforementioned terms of the oral agreements between the parties, and as further evidenced by the Invoice (Exhibit "B") and e-mail (Exhibit "A"), Defendants were to pay Plaintiff for services pursuant to their agreements.

40. The agreements were for Plaintiff to be compensated as follows: (a) $1 per phone per month; (b) $4 per PC per month; (c) 25 cent per month for each subscriber that pays (either $4.99 or $9.99) but never uses the service.

41. Plaintiff performed all services requested by Defendants. Plaintiff performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the agreements.

42. Within the past two years, Defendants breached the agreements by unilaterally attempting to terminate the agreement and refusing to pay Plaintiff.

43. There is now currently due and owing in excess of $6,220,000.00, excluding lost profits, interest and costs, which will be shown according to proof at the time of trial.

## SECOND CAUSE OF ACTION
## Common Counts – Quantum Meruit
(Against All Defendants)

44. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 43 above and incorporates same herein by this reference as though set forth in full.

45. Plaintiff alleges that Defendants became indebted to Plaintiff within the last two years for work, labor, and services rendered to Defendants, for which Defendants promised to pay Plaintiff the reasonable value of the services.

COMPLAINT FOR DAMAGES

46.  Although Plaintiff has demanded payment, neither the whole or any part of such sum has been paid, and there is now due, owing and unpaid from Defendants to Plaintiff the sum of at least $6,220,000.00, with interest thereon at the legal rate from April 5, 2022.

## THIRD CAUSE OF ACTION

### Account Stated

(Against All Defendants)

47.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 46 above and incorporates same herein by this reference as though set forth in full.

48.  Within four (4) years prior to the commencement of this action, an account was stated in writing between Plaintiff and Defendants in which it was agreed that Defendants were indebted to Plaintiff in the sum of $6,220,000.00.

49.  Plaintiff has demanded payment, neither the whole nor any part of such sum has been paid, and there is now due, owing and unpaid from Defendants to Plaintiff the sum of at least $6,220,000.00, with interest thereon at the legal rate, from August 4, 2022.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.  For compensatory damages in the principal sum of $6,220,000.00 or as otherwise shown according to proof;

2.  For the reasonable value of work, labor and services rendered;

2.  For interest on said sum;

3.  For lost profits, based on the foreseeable economic harm caused by Defendants based on the terms of compensation described in greater detail in paragraph 12, with respect to profits to be shared with Plaintiff for $1 to $1.35 per T-Mobile customers' devices;

4.  For reasonable costs and attorneys' fees according to proof as provided for under the law;

5. For costs of suit incurred herein;

6. For such other and further relief as this court deems just and proper.

DATED: January 31, 2023

BARRERA & ASSOCIATES

By: _____
PATRICIO T.D. BARRERA
RYAN FOWLER
Attorney for Plaintiff Hyperlync Technologies, Inc.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED: January 31, 2023

BARRERA & ASSOCIATES

By: _____
PATRICIO T.D. BARRERA
RYAN FOWLER
Attorney for Plaintiff Hyperlync Technologies, Inc.

# EXHIBIT A

**Reference # 010**

| | |
|---|---|
| **From:** | Jaeger, Rob [DEV] <Rob.Jaeger@print.com> |
| **Sent:** | Wednesday, 24 July 19:17 2019 |
| **To:** | Zevi Reinitz |
| **Cc:** | Jake Benjamin;Harry Fox |
| **Subject:** | RE: Sprint/Hyperlync - Upcoming Digital Vault Deployment |

Thanks Zevi.

Overall we are aligned. I do have one comment below regarding marketing channels (#5).

Thanks,
Rob


**From** Zevi Reinitz [mailto:zevi@hyperlync.com]
**Sent:** Wednesday, July 24, 2019 4:35 AM
**To:** Jaeger, Rob [DEV]   <Rob.Jaeger@print.com>
**Cc:** Jake Benjamin <jakeb@hyperlync.com>; Harry Fox <hfox@hyperlync.com>
**Subject:** Sprint/Hyperlync - Upcoming Digital Vault Deployment

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Rob,

Thanks for setting up the call yesterday and moving this forward. Just to make sure we're all on the same page, I want to summarize the key points we discussed in our meeting yesterday:

1. Sprint wants to move ahead with a custom-label deployment Hyperlync's Digital Vault platform
2. There will be one Digital Vault 'package' offered to Sprint customers including mobile backup, web app for viewing content, social media backup and aggregate access to some third party cloud content sources
3. Hyperlync will host and set up the product landing page and work with Sprint Marketing on copy, visuals and branding
4. Sprint will pay Hyperlync $1.25/mo. for every subscriber to the service, for unlimited storage and usage of the above functionality. The $1.25/mo. includes the storage/server costs. The retail price of the Digital Vault is TBD by Sprint
5. Sprint will push the Digital Vault ( product name TBD) to all Sprint subscribers through all available marketing channels to achieve maximum adoption of the service*[Jaeger, Rob [RT]  ]*  I want to make sure I manage expectations on this point. Product develops the backup solution and we will champion it to our marketing teams. However, Marketing will ultimately make the decision on how to include it in to their messaging and which tactics they will use to promote it to our current and prospective customers.
6. The current Sprint Backup app will continue run in parallel with the Digital Vault and at some point, Backup customers will be offered the chance to upgrade to the Digital Vault
7. Target launch date of the Sprint Digital Vault is October 1, 2019
8. Sprint legal and Estelle on Hyperlync's side will work together on the wording of the amendment to the current agreement to try and close this within the next week-10 days
9. The ecommerce will be run through Sprint's SMF, with integration coordinated by Debbie, Jake, Zevi and respective teams.
10. Jake and Zevi will work with Debbie ( and Rob) and team to iron out the details of the functional requirements,

1

timeline/milestones and other technical dependencies ASAP. We will aim to have an initial draft of our working project document up and running by Thursday this week.

Can you please confirm that we're in sync with the above and that I haven't missed any key high-level items at this stage?

Thanks and regards,

Zevi

==================
Confidentiality Note: This e-mail and any attachment( s) are intended only for the person to which it is addressed and may contain information that is privileged, confidential and protected from disclosure. Distribution or copying of this e-mail by anyone other than the intended recipient is prohibited. If you have received this e-mail in error, please call Hyperlync Technologies, Inc., at 904-371-4271, and destroy the original message and all copies. Thank you.

# EXHIBIT B



August 4, 2022

Sprint/Nextel Systems Corp
PO Box 63670
Phoenix, AZ 85082

# Invoice

## Sprint "Unlimited Cloud" Development Costs

|  | Hourly Rate | Hours | Total |
|---|---|---|---|
| **Development Management (2)** | | | |
| CTO | $400 | 945 | $378,000 |
| Vp Software | $450 | 983 | $442,350 |
| | | | |
| **Developers (9)** | | | |
| Android 1 | $250 | 965 | $241,250 |
| Android 2 | $250 | 911 | $227,750 |
| Android 3 | $250 | 978 | $244,500 |
| Iphone 1 | $250 | 971 | $242,750 |
| Iphone 2 | $250 | 895 | $223,750 |
| Iphone 3 | $250 | 944 | $236,000 |
| Database | $250 | 981 | $245,250 |
| Web 1 | $250 | 750 | $187,500 |
| Web 2 | $250 | 729 | $182,250 |
| | | | |
| **Graphic (2)** | | | |
| UI 1 | $250 | 624 | $156,000 |
| UI 2 | $200 | 592 | $118,400 |
| | | | |
| **QA (4)** | | | |
| QA manager | $300 | 985 | $295,500 |
| QA 1 | $150 | 800 | $120,000 |
| QA 2 | $150 | 788 | $118,200 |
| QA 3 | $150 | 788 | $118,200 |



**Project Management (2)**

| | | | |
|---|---|---|---|
| CEO | $500 | 431 | $215,500 |
| VP Biz Dev | $350 | 1,109 | $388,150 |

**Admin (2)**

| | | | |
|---|---|---|---|
| Estelle- USA | $200 | 250 | $50,000 |
| Mandy- Israel | $200 | 250 | $50,000 |

| | Cost per month | Months | Total |
|---|---|---|---|
| Facility/ G&A | $75,000 | 6 | $450,000 |

| | | |
|---|---|---|
| Dedicated hardware | | $175,000 |
| Cloud Servers | | $250,000 |
| Travel- Israel/US | | $25,000 |
| **Total Development Cost** | | **$5,381,300** |

### Project maintenance cost- February 2019- April 2021

| | Hourly Rate | Hours per month (avg) | Months | Total hours | Total |
|---|---|---|---|---|---|
| **Development Management (2)** | | | | | |
| CTO | $400 | 4 | 27 | 108 | $43,200 |
| Vp Software | $450 | 10 | 27 | 270 | $121,500 |
| **Developers (4)** | | | | | |
| Android 1 | $250 | 5 | 12 | 60 | $15,000 |
| Iphone 1 | $250 | 4 | 12 | 48 | $12,000 |
| Database | $250 | 2 | 12 | 24 | $6,000 |
| Web 1 | $250 | 2 | 10 | 20 | $5,000 |



| | | | | | |
|---|---|---|---|---|---|
| **Graphic (1)** | | | | | |
| UI 1 | $250 | 2 | 12 | 24 | $6,000 |
| | | | | | |
| **QA (1)** | | | | | |
| QA 1 | $150 | 10 | 15 | 150 | $22,500 |
| | | | | | |
| **Project Management (1)** | | | | | |
| CEO | $500 | 5 | 27 | 135 | $67,500 |

| | Cost per month | | | Months | Total |
|---|---|---|---|---|---|
| Facility/ G&A | $12,500 | | | 27 | $337,500 |
| | | | | | |
| Dedicated hardware Cloud Servers | $7,500 | | | 27 | $202,500 |

**Total Development Cost**                                                  $838,700

**Total Invoice**                                                                          $6,220,000